## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER LANNOM<br>1725 Lanier Place N.W.<br>Apartment 24B<br>Washington, D.C. 20009<br><br>       Plaintiff,<br><br>    v.<br><br>ZAONA RILEY<br>3720 Worthington Street<br>White Plains, MD 20695<br><br>    and<br><br>JOANNE CHANDLER<br>3720 Worthington Street<br>White Plains, MD 20695<br><br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **CASE NO. 1: 24-cv-3508**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Jennifer Lannom ("Plaintiff" or "Ms. Lannom") and for her complaint against Defendant Zaona Riley ("Defendant Riley" or "Riley") and Defendant Joanne Chandler ("Defendant Chandler" or "Chandler") states as follows:

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction in this matter is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1).

2.      The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and Plaintiff does not share a citizenship with either

Defendant. Plaintiff is a citizen of the District of Columbia. Defendants Riley and Chandler are both citizens of the State of Maryland.

3. Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## PARTIES

4. Plaintiff Jennifer Lannom is an adult citizen of the District of Columbia, residing at 1725 Lanier Place N.W., Apartment 24B, Washington, D.C. 20009.

5. Defendant Zaona Riley is an adult citizen of the State of Maryland, residing at 3720 Worthington Street, White Plains, MD 20695.

6. Defendant Joanne Chandler is an adult citizen of the State of Maryland, residing at 3720 Worthington Street, White Plains, MD 20695.

## FACTS

7. On Wednesday, July 31, 2024, at approximately 2:50 PM, Ms. Lannom was legally riding westbound on the 600 block of I Street, N.W. on a green rented electric bicycle ("bicycle").

8. D.C. Mun. Regs. tit. 18 § 1200.3 states that "operators of bicycles have the same rights as do operators of other vehicles."

9. Accordingly, Ms. Lannom had the right to travel on I Street via bicycle, just as she would have that right had she been driving a car.

10. At the same time, Defendant Riley was also traveling westbound on the 600 block of I Street, N.W., in Washington D.C., driving an orange 2017 Nissan Rogue Sport ("vehicle"). As both Plaintiff and Defendant Riley approached the intersection of I Street N.W. and Seventh

2

Street N.W. ("Intersection") from I Street's single lane, Defendant Riley was driving her vehicle in front of Plaintiff, and Plaintiff was on her bicycle about a car length behind.

11.    The headquarters of the International Brotherhood of Electrical Workers ("IBEW") is located on the western side of the Intersection, at 900 Seventh Street, N.W., Washington, D.C. 20001.  The front façade of the IBEW building has a security camera pointed at the Intersection.

12.    When Defendant Riley reached the Intersection, she passed over the crosswalk and pulled to the right, seemingly undertaking a right turn.

13.    Below is a still image from the IBEW security camera showing Defendant Riley's vehicle, circled, at the Intersection past the crosswalk and pulled to the right.



14.    As Plaintiff approached the Intersection, she had an unobstructed single lane in front of her and reasonably believed that Defendant Riley was making a right turn because Defendant Riley had pulled her vehicle to the right.

15.    As Plaintiff legally continued straight towards the Intersection, Plaintiff's bicycle and Defendant Riley's vehicle were briefly parallel with each other.

3

16.    Below is a still image from the IBEW security camera of Defendant Riley's vehicle and Plaintiff's bicycle at the moment they were parallel. Both the vehicle and the bicycle are within the circled portion of the image.



17.    As Ms. Lannom entered the Intersection, Defendant Riley suddenly and without warning turned sharply to the left to make an illegal U-turn.

18.    Below is a still image from the IBEW security camera of Defendant Riley turning sharply to the left after having started to turn right. Both the vehicle and the bicycle are within the circled portion of the image.



19.     Defendant Riley's aforementioned actions and complete disregard for the safety of everyone on the roadway resulted in Defendant Riley's vehicle violently striking Ms. Lannom ("Collision").

20.     Below is a still image from the IBEW security camera of Defendant Riley striking Ms. Lannom.  Plaintiff's bicycle and the front end of Defendant Riley's vehicle are within the circled portion of the image.



21.     During the Collision, Ms. Lannom was thrown off her bicycle and landed violently on the pavement.

22.     Below is a still image from the IBEW security camera showing Ms. Lannom on the pavement and her bicycle overturned.  Ms. Lannom, the bicycle, and the front end of Defendant Riley's vehicle are within the circled portion of the image.



23.    As it is clear from the video and the Collision, Defendant Riley did not check to see if there was oncoming traffic to her left before turning abruptly and striking Ms. Lannom, nor did she use a turn signal.

24.    As a direct and proximate result of Defendant Riley's tortious actions as aforesaid, Ms. Lannom suffered severe injuries, including but not limited to a displaced, intra-articular fracture of the left ulna, requiring an open reduction internal fixation operation on her left elbow to surgically reconstruct her arm.  Plaintiff attended physical therapy for several months in an attempt to regain use of her arm.

25.    As a further direct and proximate result of the Collision, Plaintiff was also left with permanent scarring on her left elbow.

26.    Below are two images of Ms. Lannom's arm following her surgery.  Bruising, scarring, and post-surgical stitches are evident in both images.

6





27.    As a direct and proximate result of the Collision, Plaintiff has suffered and will continue to suffer physical and emotional pain that will continue to impact her for the rest of her life.

28.    As a direct and proximate result of the Collision, Plaintiff has already incurred approximately $74,000 in medical expenses to date.

29.    As a direct and proximate result of the Collision, Plaintiff will in the future continue to incur significant medical expenses.

30.    As a direct and proximate result of the Collision, Plaintiff was, and continues to be, prevented from pursuing her normal and customary activities.

31.    At no time did Plaintiff act in a negligent manner, nor did she assume any risk.

32.    When police investigated the Collision, Defendant Riley provided a Metropolitan Police patrol officer with a policy number for Geico Casualty Company ("Geico").

33.    The Metropolitan Police Department's subsequent crash report lists Zaona Riley as the owner of the vehicle.

34.    After attempting to contact Defendant Riley, Plaintiff received a phone call from Joanne Chandler, Defendant Riley's grandmother, who lives at the same address as Defendant Riley. Defendant Chandler verbally informed Plaintiff that the vehicle belongs to her, and that she would not provide Plaintiff with insurance information for the vehicle.

35.    D.C. Code § 50-1301.08, a provision of the Motor Vehicle Safety Responsibility Act of the District of Columbia ("MVSRA"), provides:

Whenever any motor vehicle . . . shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident be deemed to be the agent of the owner of such motor vehicle.

36.    The District of Columbia Court of Appeals and the United States Circuit Court for the District of Columbia have both held that D.C. Code § 50-1301.08 creates a rebuttable presumption that an operator of a vehicle has the consent of the owner and is therefore the owner's agent. *U-Haul Co. v. State Farm Mut. Auto. Ins. Co.*, 616 A.2d 1264 (D.C. 1992);

*Athridge v. Rivas*, 312 F.3d 474, 477 (D.C. Cir. 2002) ("[The MVSRA] creates a rebuttable presumption the owner consented to the use of the car, a powerful presumption that can only be overcome by 'uncontradicted and conclusive evidence' establishing non-consent").

37.     The District of Columbia Court of Appeals and the United States Circuit Court for the District of Columbia have both held that D.C. Code § 50-1301.08 imposes vicarious liability on the owner of a motor vehicle when a driver acting as their agent is liable for a collision. *Agomo v. Fenty*, 916 A.2d 181, 192 (D.C. 2007) ("[D.C. Code § 50-1301.08 holds] any person driving a car does so with the consent of the registered owner, and unless the owner comes forward with evidence to rebut that presumption, liability will be vicariously imposed."); *Athridge v. Rivas*, 312 F.3d at 475 (finding that a plaintiff was permitted to assert vicarious liability against a vehicle's owner for a collision caused by an agent).

38.     As Defendant Chandler has not given any indication suggesting non-consent to Riley's use of the vehicle, Defendant Riley was acting as Defendant Chandler's agent under D.C. Code § 50-1301.08.

39.     Therefore, Defendant Chandler is vicariously liable and responsible for all injuries or damages caused by the wrongful and/or negligent acts of her agent, Defendant Riley.

## COUNT I
### (Negligence and Negligence Per Se)
### Defendants Riley and Chandler

40.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

41.     At all relevant times, Defendants owed Plaintiff, as another legal user of the public roadways, a duty of care to operate the vehicle in a safe and proper manner.

9

42. At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2213.4, which provides: "An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle."

43. 18 D.C.M.R. § 2213.4 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendants cannot offer an explanation as to their violation of such regulation, thereby rendering Defendants negligent *per se* (*i.e.*, as a matter of law).

44. At all relevant times herein, there was in effect in the District of Columbia D.C. Code § 50–2201.04, which provides: "A person commits the offense of reckless driving if the person drives a motor vehicle on any highway in the District . . . In any other manner that displays a conscious disregard of the risk of causing property damage or bodily injury to any person."

45. D.C. Code § 50–2201.04 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendants cannot offer an explanation as to their violation of such regulation, thereby rendering Defendants negligent *per se* (*i.e.*, as a matter of law).

46. At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2204.7, which provides "No vehicle shall make a U-turn so as to proceed in the opposite direction at any intersection controlled by traffic lights."

47. 18 D.C.M.R. § 2204.7 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendants cannot offer an explanation as to their violation of such regulation, thereby rendering Defendants negligent *per se* (*i.e.*, as a matter of law).

48.     At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2204.3, which provides "No person shall turn any vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway without giving an appropriate signal."

49.     18 D.C.M.R. § 2204.3 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendants cannot offer an explanation as to their violation of such regulation, thereby rendering Defendants negligent *per se* (*i.e.*, as a matter of law).

50.     At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2204.8, which provides "The driver of any vehicle shall not turn a vehicle so as to proceed in the opposite direction unless such movement can be made in safety and without interfering with other traffic."

51.     18 D.C.M.R. § 2204.8 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendants cannot offer an explanation as to their violation of such regulation, thereby rendering Defendants negligent *per se* (*i.e.*, as a matter of law).

52.     Each of the preceding regulations is meant to promote safety.  Plaintiff was a member of the class protected by each regulation.  Following each violation, Plaintiff's injury resulted from the type of risk which the regulations were designed to protect.

53.     Defendants breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

(a)     Failure to pay full time and attention to the operation of the vehicle;

(b)     Failure to keep a proper lookout;

11

(c)     Failure to operate the vehicle safely;

(d)     Failure to maintain control of the vehicle;

(e)     Striking Plaintiff;

(f)     Failure to use a turn signal;

(g)     Undertaking a U-turn where it was illegal to do so;

(h)     Driving at an unsafe speed;

(i)     Failure to ensure that no other vehicles/cyclists were in the intended path;

(j)     Failure to act reasonably under the circumstances;

(k)     Failure to warn Plaintiff;

(l)     Reversing direction in interference with traffic; and

(m)     Violating the above-listed local regulations without explanation.

54.     Plaintiff's injuries were a direct and proximate result of the aforesaid wrongful acts and neglect of Defendants.

55.     Plaintiff acted properly in all respects and was free from negligence in connection with this incident.

56.     As a direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff suffered severe and permanent injuries, including but not limited to injuries to her left arm.  Plaintiff was also left with permanent scarring as a result of the Collision.

57.     As a further direct and proximate result of the negligent acts and omission of Defendants, Plaintiff suffered and will continue to suffer physical and emotional pain and suffering.

58.     Plaintiff's injuries continue to adversely impact her life and will do so for the rest of her life.

12

59.     As a further direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff has incurred approximately $74,000.00 in medical expenses to date.

60.     Additionally, as a direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff will in the future continue to incur significant medical expenses, including, but not limited to, those costs associated with physical therapy.

61.     As a further direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff was, and continues to be, prevented from pursuing her normal routine and customary activities.

62.     As a further direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff has been caused to undergo, and will undergo in the future, physical and mental pain and suffering.

63.     For such injuries proximately resulting from the negligent acts and omissions of Defendants, Defendants are liable to Plaintiff for compensatory damages in the amount of One Million Dollars ($1,000,000), which amount shall be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants, as follows: (1) compensatory damages in the amount of One Million Dollars ($1,000,000.00), which shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

## JURY TRIAL REQUESTED

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

By:     Peter C. Grenier, Esq., D.C. Bar #418570
        GRENIER LAW GROUP PLLC
        1920 L Street, N.W., Suite 750
        Washington, D.C. 20036
        pgrenier@grenierlawgroup.com
        Tel: (202) 768-9600
        Fax: (202) 768-9604

Dated: December 17, 2024

14