**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JENNIFER LANNOM, Plaintiff, | |
| v. | Civil Case No. 24-3508 (RJL) |
| ZAONA RILEY, *et al.*, Defendants. | |

**MEMORANDUM OPINION**
(September 14th, 2026) [Dkt. #9]

Jennifer Lannom ("Lannom" or "plaintiff"), a D.C. resident, was riding her bicycle when she was struck by a car driven by Zaona Riley ("Riley"), a Maryland resident. The collision, caused by Riley's illegal U-turn, physically and emotionally injured Lannom. Lannom sued both Riley and Riley's grandmother, Joanne Chandler ("Chandler"), who owned the car, for negligence and negligence *per se*. The defendants failed to respond to the complaint or otherwise appear in the action, and Lannom moved for default judgment. Upon consideration of the record and applicable law, I will **GRANT** plaintiff's motion for default judgment and award plaintiff **$474,047.46** in total damages.

## BACKGROUND

As the defendants have not appeared in this action, I must rely on Lannom's description of the events as drawn from the Complaint ("Compl.") [Dkt. #1], the Plaintiff's

Proposed Findings of Fact and Conclusions of Law ("Pl.'s Proposed Findings") [Dkt. #15], and the exhibits presented during the evidentiary hearing.[1]

## I. The Accident and Emergency Room Visits

On July 31, 2024, Riley struck Lannom with her car while making a sudden illegal U-turn at the intersection of I Street and Seventh Street NW in Washington, D.C. *See* Pl.'s Proposed Findings at 4. Riley did not use a turn signal and did not check to see if there was oncoming traffic before turning abruptly into Lannom. *Id.* The collision was captured on a nearby security camera and clearly shows Riley's car knocking Lannom off her bike and into the intersection. *Id.*; *see also* Pl.'s Ex. 29 (depicting video footage of the collision).

After Lannom was struck, she began to hyperventilate and experienced "shock" as cars attempted to move around her in the street. Pl.'s Proposed Findings at 4–5. Police officers arrived and spoke to Lannom, who was crying. *Id.* at 5; *see also* Pl.'s Exs. 35–37 (depicting body worn camera footage of the responding officers interviewing Lannom). An ambulance brought Lannom to Howard University Hospital, where she reported "intense, sharp, stabbing pain in her left elbow that continued to worsen." Pl.'s Proposed Findings at 5. Lannom was diagnosed with a "displaced, comminuted fracture of the left olecranon, extending into the ulnohumeral joint," in essence a fractured left elbow joint where the bone was broken into many pieces. *Id.*; *see also* Pl.'s Exs. 1–6 (detailing the discharge summary, x-rays, and medication records from Lannom's care at Howard University Hospital).

[1] Plaintiff's exhibits were entered into evidence during the evidentiary hearing on damages on May 21, 2026. *See* Min. Entry, *Lannom v. Riley*, 1:24-cv-03508-RJL (D.D.C. May 21, 2026).

Howard University healthcare providers informed Lannom she would need surgery to repair the broken bones in her elbow and affixed a splint to immobilize the joint until the surgery could take place. Pl.'s Proposed Findings at 5. Lannom ultimately stayed at the Howard University Hospital for nearly 17 hours, as the medical staff wanted to observe Lannom to ensure a bone fragment from her arm would not cut into her vein. *Id.*

After being discharged, Lannom continued to experience severe pain and, two days later, visited the Emergency Department of MedStar Washington Health Center because her left hand had swelled significantly beneath the splint. *See* Pl.'s Ex. 39. The hospital re-splinted her arm and provided her with additional medication to cope with the ongoing pain. Pl.'s Proposed Findings at 6–7; *see also* Pl.'s Exs. 7–9 (describing the medical observations and pain reports taken at MedStar Washington Health Center).

## II. Surgery and Physical Therapy

Five days after the accident, on August 5, 2024, Lannom met with orthopedic surgeon Dr. Kevin O'Malley, M.D. for a pre-operative visit. Pl.'s Proposed Findings at 7. On August 7, 2024, Dr. O'Malley performed "open reduction [and] internal fixation" surgery on Lannom. *Id.*; *see also* Pl.'s Exs. 15–20 (showcasing the pre- and post-operative x-ray images and surgical notes from the procedure). During the surgery, Dr. O'Malley placed a metal plate and several screws around Lannom's left elbow joint, which remain in place today. *See* Pl.'s Ex. 17. Immediately after the surgery, Lannom noted that she felt "excruciating pain at a 10 out of 10 intensity level" when the pain medications wore off. Pl.'s Proposed Findings at 7.

Lannom began physical therapy on August 15, 2024, and continued attending

sessions twice a week for two months. *Id.* at 8. She also attended several post-operative appointments with her surgeon. *Id.* Ultimately, Lannom's emergency care, surgery, post-operative appointments, physical therapy, and medications totaled $74,047.46. *Id.* at 9; *see also* Pl.'s Exs. 48–55 (providing relevant excerpts of Lannom's medical bills); Pl.'s Ex. 56 (summarizing Lannom's medical costs).

**III. Recovery and Medical Examination**

In the months following the accident, Lannom's collision-related injuries made even routine tasks—like dressing, showering, cooking, typing, and caring for her cat—painful and difficult. Pl.'s Proposed Findings at 9. Her injuries also affected her sleep, mental health, and social life: she developed anxiety and panic attacks, stopped biking and other activities she loved, and now lives with a "lengthy and visible scar on her left elbow that she perceives as 'gross.'" *Id.* at 10.

Plaintiff's medical expert, Dr. Joel D. Fechter, M.D., personally examined Lannom, her medical records, and footage of the collision to opine on Lannom's medical care to date and future quality of life. *Id.* at 11. Dr. Fechter, a licensed and board-certified orthopedic surgeon, explained that Lannom's ongoing symptoms—including, but not limited to, intermittent, sharp left-elbow pain every other day, numbness and tingling at the scar, pain when resting the elbow on a surface, and increased pain with bending, lifting, pushing, pulling, and twisting—are likely permanent. *Id.* at 12.

Dr. Fechter added that, as of now, the hardware installed during Lannom's surgery is permanent without surgical intervention. *Id.* at 11. At some point in the future, Lannom may choose to remove the hardware from her elbow by a procedure similar in scope and

complexity to the one she underwent previously. *Id.* at 13. However, such a procedure could not be guaranteed to alleviate any of her current symptoms. *Id.* Lannom testified that she has considered the hardware-removal surgery, but worries about reliving the "most painful thing in my life." *Id.*

## IV. Procedural History

On December 17, 2024, Lannom filed suit against Riley and Chandler for negligence and negligence *per se*. *See* Compl. ¶¶ 40–63. Lannom claims that Riley violated several provisions of D.C. traffic laws prohibiting reckless driving and prohibiting U-turns at any intersection controlled by traffic lights and that defendants' negligence proximately caused her injuries. *Id.* ¶¶ 42–63.

Lannom served defendants with the complaint on December 26, 2024. *See* Return of Service [Dkt. #4, #5]. Neither defendant entered an appearance nor filed an answer to the complaint. On January 22, 2025, Lannom moved for entry of default, [Dkt. #6], which the clerk entered against both Riley [Dkt. #7] and Chandler [Dkt. #8]. On March 28, 2025, Lannom moved for default judgment against Riley and Chandler jointly and severally. *See* Motion for Default Judgment ("Mot.") [Dkt. #9]. The Court then held an evidentiary hearing to determine damages on May 21, 2026. *See* Min. Entry (May 21, 2026). At the hearing, Lannom testified in person, and plaintiff's medical expert Dr. Fechter testified *de bene esse*.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, there is a "two-step procedure" in obtaining a default judgment. *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99,

102 (D.D.C. 2015). First, after a defendant "has failed to plead or otherwise defend," the plaintiff may request that the Clerk of the Court enter default against the defendant. Fed. R. Civ. P. 55(a). Second, after default is entered, the plaintiff may move for a default judgment. Fed. R. Civ. P. 55(b)(2).

An entry of default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011). However, this "does not automatically establish liability in the amount claimed by the plaintiff." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013). Rather, the Court "is required to make an independent determination of the sum to be awarded," *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), and is afforded "considerable latitude" in making its determination, *Boland*, 763 F. Supp. 2d at 67. The Court may hold an evidentiary hearing to help ascertain the appropriate amount of damages. Fed. R. Civ. P. 55(b)(2)(B).

## DISCUSSION

To begin, Lannom has fulfilled the procedural requisites for entry of default judgment. She effected service of process pursuant to Federal Rule of Civil Procedure 4 on each defendant and the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a). Defendants have neither answered the complaint nor filed any motion to vacate the orders of default pursuant to Rule 55(c). Because defendants have not responded to plaintiff's complaint, the defendants admit all allegations in the complaint not relating to damages. *See* Fed. R. Civ. P. 8(b)(6); *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C.

2001). In any event, there is little reason to question plaintiff's account of the collision given that a security camera captured the entire event. *See* Pl.'s Ex. 29.

## I. Liability

Plaintiff has adequately pleaded facts that establish all elements of her negligence and negligence *per se* claims. To allege a negligence claim, a plaintiff must show, "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016). The doctrine of negligence *per se* applies "where a particular statutory or regulatory standard is enacted to . . . prevent the type of accident that occurred[,] . . . [an] unexplained violation of that standard renders the defendant negligent as a matter of law." *Sibert-Dean v. Washington Metro. Area Transit Auth.*, 721 F.3d 699, 702 (D.C. Cir. 2013) (cleaned up).

Here, Riley breached the duty of care she owed to plaintiff when she illegally made a sudden U-turn in the middle of an intersection into oncoming traffic. In so doing, Riley also violated several municipal laws designed to prevent traffic accidents. *See* 18 D.C.M.R. § 2213.4 ("An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle."); 18 D.C.M.R. § 2204.7 ("No vehicle shall make a U-turn so as to proceed in the opposite direction at any intersection controlled by traffic lights."); 18 D.C.M.R. § 2204.3 ("No person shall turn any vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway without giving an appropriate signal."); 18 D.C.M.R. § 2204.8 ("The driver of any vehicle shall not turn a vehicle so as to proceed in the opposite direction unless such

movement can be made in safety and without interfering with other traffic."); D.C. Code § 50-2201.04(b) ("A person commits the offense of reckless driving if the person drives a motor vehicle on any highway in the District . . . [i]n any other manner that displays a conscious disregard of the risk of causing property damage or bodily injury to any person."). Finally, Riley's reckless maneuver was clearly the proximate cause of Lannom's injuries.

Further, Chandler is vicariously liable for Lannom's injuries. Under D.C. law, Riley was acting as Chandler's agent since she was operating Chandler's vehicle, allegedly with Chandler's consent. *See Athridge v. Rivas*, 312 F.3d 474, 477 (D.C. Cir. 2002). Chandler verbally communicated that the car was hers. Compl. ¶ 34. Lannom also submitted certified copies of documents obtained from the Virginia Department of Motor Vehicles, confirming Chandler's ownership of the vehicle. *See* Pl.'s Ex. 60. Chandler has provided no evidence to overcome the presumption that Riley acted as her agent when she operated the vehicle. Therefore, plaintiff has adequately alleged her claims against both defendants.

## II. Damages

With liability established, what remains is the question of damages. The plaintiff must prove to the Court her requested damages "to a reasonable certainty." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68. The plaintiff may offer "detailed affidavits or documentary evidence" on which the Court may rely, and is "entitled to all reasonable inferences from the evidence [she] offer[s]." *Amrine Drywall*, 239 F. Supp. 2d at 30.

### a. Medical Costs

"Under settled District of Columbia law, a 'plaintiff's damages [for past medical

expenses] should include the value of all reasonably necessary medical and hospital services furnished' to the plaintiff." *Green v. U.S. Postal Serv.*, 589 F. Supp. 2d 58, 68 (D.D.C. 2008) (quoting *Albano v. Yee*, 219 A.2d 567, 568 (D.C. 1966)).

Here, Lannom's medical costs total **$74,047.46**; this includes costs stemming from the ambulance ride, the initial emergency visit at Howard University Hospital, the subsequent emergency visit at MedStar, the surgery, post-operative appointments, and physical therapy. *See* Pl.'s Ex. 56 (summarizing Lannom's medical bills). When asked whether the "medical treatment [Lannom] received, was reasonably necessary treatment causally connected to the injury she suffered in this collision," Dr. Fechter, plaintiff's medical expert, confirmed, "[y]es, I think that it was." *See* Pl.'s Ex. 63, 36:13–17 (transcript of Dr. Fechter's deposition testimony). I have no reason to doubt his conclusion.

**b. Pain and Suffering**

"Trying to quantify pain and suffering and to put a dollar figure on the amount of damages to be awarded is extremely difficult." *Green*, 589 F. Supp. 2d at 70. In D.C., judges often consult the D.C. Standardized Civil Jury Instructions when considering an appropriate damages award. *See, e.g., Rhodes v. United States*, 967 F. Supp. 2d 246, 324–25 (D.D.C. 2013). Under D.C. Standardized Civil Jury Instruction § 13-1, the Court may consider, among other factors:

1. The extent and duration of any physical injuries;
2. The effects that any physical injuries have on the overall physical and emotional well-being of the plaintiff;
3. Any physical pain and emotional distress that the plaintiff has suffered in the

past or may suffer in the future;

4. Any disfigurement or deformity suffered by the plaintiff, as well as any humiliation or embarrassment associated with the disfigurement or deformity;

5. Any inconvenience the plaintiff has experienced in the past or may experience in the future.

Here, the injury to Lannom's elbow was significant and the symptoms from her injury—including intermittent pain, numbness, and diminished lifting capacity—are likely permanent. Pl.'s Proposed Findings at 12. In her own words, Lannom suffered "emotional distress" in the aftermath of the accident. *Id.* at 20. The injury inconvenienced Lannom at home and at work, and has altered her ability to enjoy certain activities, like bike riding, that featured prominently in her previous routines. *Id.*

Upon consideration of the evidence and testimony presented at the evidentiary hearing, the Court deems it fair to award Lannom $400,000 in past and future noneconomic damages for her pain, suffering, mental distress, inconvenience, and loss of capacity for the enjoyment of life resulting from the accident. This amount is commensurate with damages awarded in cases where plaintiff suffered injuries under a similar set of facts. *See, e.g., Eason v. United States*, 771 F. Supp. 3d 1263 (M.D. Fla. 2025) (finding plaintiff was entitled to $300,000 for past and future noneconomic damages after he was struck by a vehicle while riding his bike and suffered injuries to his left shoulder, brain, and spine).

## CONCLUSION

For all the reasons stated above, it is hereby **ORDERED** that plaintiff's Motion for Default Judgment [Dkt. #9] is **GRANTED**. An accompanying Order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge